UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

BILLY JACK ELLIS, )
 )
 ) 2:15-CV-00253-MCLC
 Plaintiff, )
 )
 vs. )
 )
 )
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
 )

 Defendant

**MEMORANDUM AND ORDER**

This matter is before the United States Magistrate Judge upon the consent of the parties and an order of reference from the District Judge [Doc. 16] for final disposition. This is an action for judicial review of the final decision of the defendant Commissioner denying the plaintiff's applications for disability insurance benefits under the Social Security Act following a hearing before an Administrative Law judge ("ALJ"). The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 12], while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 19].

**I.  STANDARD OF REVIEW**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *Talavera v. Astrue,* 697 F.3d 145 (2d Cir. 2012); *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime*

1

*Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Has the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## II.  PROCEDURAL BACKGROUND

### A.  Plaintiff's initial disability application

On August 4, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 15, 2013. Plaintiff was 35 years of age on the date of the ALJ's decision. (Tr. 56). He completed the 11th grade in high school, but later obtained his General Equivalency Diploma (GED). (Tr. 56). He was previously employed in delivery service, delivering appliances, washers and dryers, stoves and the like. (Tr. 57). He also was employed as a sales person for "Ride Revolution" selling car parts and for Kykers Automotive, installing motors and transmissions. (Tr. 58-59).

The pertinent medical evidence is accurately summarized by the Commissioner in her brief:

> Plaintiff joined the Army as an infantryman in January 2013, and was stationed at Fort Drum, New York (Tr. 301). On June 4, 2013, Plaintiff reported that he had injured his back the week earlier while doing dead lifts (Tr. 518). Although he had a history of back pain, he had been pain free for two months prior to his injury (Tr. 518). He felt a pop during lifting and felt grinding when moving his back (Tr. 518). … His right lumbar paraspinal was tender on palpation and muscle spasm was observed (Tr. 519). His thoracolumbar spine demonstrated full range of motion and a straight leg raising test was negative (Tr. 519). He had no decrease in sensation in either leg and no motor strength weakness in either knee or ankle (Tr. 519). The provider prescribed Flexeril and naproxen for pain (Tr. 519). Plaintiff underwent physical therapy in July, August, September, and October 2013 (Tr.

3

495-515). He reported that pool therapy relieved his symptoms, but regular physical therapy aggravated his low back pain (Tr. 495).

Upon examination in October 2013, Plaintiff's lumbar spine was tender and pain was elicited by motion, but there were no muscle spasms and the range of motion was normal (Tr. 493). His sensory examination, balance, gait and stance, and reflexes were normal (Tr. 493). … An October 29, 2013 MRI scan of Plaintiff's lumbar spine showed diffuse disc bulges at the T11-T12 and L1-L2 through L4-L5 levels with minimal thecal sac compression (Tr. 991). There was a diffuse disc bulge and small left paracentral disc protrusion at the T12-L1 level without spinal cord compression (Tr. 991).

On November 5, 2013, Christopher Mueller, P.A.-C, Plaintiff's primary care manager, no red flags were noted on physical examination (Tr. 488). Plaintiff could bend and almost touch his toes, but it was slow (Tr. 488). … His gait and stance were normal (Tr. 488). … Physical and mental examinations by Mr. Mueller were uniformly unremarkable (Tr. 396, 419, 454, 468, 476, 1063).

On November 26, 2013, Jesse Gabriel, M.D., at the pain management clinic, evaluated Plaintiff's low back pain (Tr. 480-81). Physical examination showed normal sensation in Plaintiff's inguinal region, thighs, knees, legs, feet, buttock, or perianal region (Tr. 481). Strength was full in his hips, knees, and ankles (Tr. 481). Reflexes were normal (Tr. 481). Dr. Gabriel assessed low back pain and intervertebral disc degeneration-lumbar (Tr. 481). …

On December 16, 2013, a needle electromyography (EMG) revealed mild, chronic changes in few muscles of the right leg (Tr. 275). The rest of the nerve conduction study and needle EMG examination was normal (Tr. 275). The neurologist stated there was electrophysiologic evidence of mild, chronic right L5-S1 lumbosacral radiculopathy (Tr. 276).
…
On February 11, 2014, a provider from North Country Orthopaedic Group evaluated Plaintiff's complaints of back pain (Tr. 277-79). Upon examination, Plaintiff walked with a slightly limping gait favoring his right side (Tr. 278). He could walk heel to toe but heel walking increased the pain down his right leg (Tr. 278). Straight leg raise testing was irritable on the right, negative on the left (Tr. 278). Muscle strength was normal and deep tendon reflexes were

4

trace (Tr. 278). There was tenderness to both sacroiliac joints and tenderness over the right lateral lumbar region of his back without muscle spasms (Tr. 278). The provider assessed multilevel lumbar degenerative disc disease, back pain, right lower extremity radiculopathy, and most likely sacroiliac joint dysfunction (Tr. 278). He submitted approval for Plaintiff to receive epidural steroid injections (Tr. 278). …

On March 27, 2014, Plaintiff reported anxiety from an increased amount of stress due to his discharge from the military through the medical board process (Tr. 434). … The provider diagnosed adjustment disorder with anxious mood (Tr. 436).

…

Plaintiff returned for follow-up with pain management in May and June 2014 (Tr. 385- 86, 409-11). His physical examinations were normal – his gait and stance were normal; he was oriented in all spheres, well-developed, well-nourished, and in no acute distress; and his mood was euthymic and his affect was normal (Tr. 386, 411). He continued only taking over-the-counter Motrin and was not interested in trying any other pills (Tr. 385, 411).

On July 17, 2014, Svellana Shah, CPT, M.D., and Corette Rajner, M.D., completed a permanent physical profile of Plaintiff (Tr. 993). They stated that Plaintiff could not perform many of the functional activities required of every soldier and referred him for medical evaluation board review (Tr. 993).

…

On September 16, 2014, Carly Melcher, Psy.D., performed a psychological consultative examination of Plaintiff (Tr. 585-89). Dr. Melcher opined that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; and maintain attention and concentration on a regular schedule (Tr. 587-88). He had mild to moderate limitation learning new tasks and performing complex tasks independently; mild limitations making appropriate decisions; moderate limitation relating adequately with others; and mild to moderate limitation appropriately dealing with stress (Tr. 588). She diagnosed PTSD with panic attacks and major depressive disorder, recurrent (Tr. 589).

Also on September 16, 2014, Jerome Cuyler, M.D., an internist,

5

performed a physical consultative examination of Plaintiff (Tr. 590-95). Plaintiff told Dr. Cuyler that his activities of daily living were severely limited, and that he could only watch television and listen to the radio (Tr. 592). Dr. Cuyler described Plaintiff's gait as tenuous and noted that he stepped very gingerly from one place to another, but could walk without an assistive device (Tr. 592). It was a normal gait, just slow (Tr. 592). Following examination, Dr. Cuyler assessed mild to moderate limitations in sitting, standing, walking, and climbing stairs, and moderate to marked limitations in Plaintiff's ability to bend, lift, carry, kneel, reach, handle objects, and travel (Tr. 595). Radiology report of the cervical spine showed stable mild reversal of normal lordosis, possibly secondary to positioning versus pain/spasm (Tr. 596). Very minimal anterior osteophytes and endplate sclerosis were noted at the C4 and C5 levels, representing mild early degenerative change (Tr. 596). Radiology report of the lumbosacral spine showed chronic compression deformities involving the T11 through L1 levels, associated post-traumatic degenerative disc disease at the T11, T12, and L1 levels, and mild degenerative disc disease at L4 (Tr. 598).

In October 2014, Plaintiff fell down the stairs and went to the emergency room (Tr. 1000- 01). Upon examination, Plaintiff's cervical spine was non-tender and circulation, range of motion, and sensation were normal (Tr. 1000). Radiology reports showed no acute compression fracture or destructive lesion, only degenerative findings consistent with Plaintiff's previous MRI scans and x-rays (Tr. 1002-03). The next week, x-ray of Plaintiff's right elbow showed a hairline fracture lateral articular surface of the ulna (Tr. 605). Physical examination showed some weakness, tenderness on palpation and restricted range of motion with pain in his right elbow and arm (Tr. 672, 667). His examination was otherwise normal (Tr. 667, 672).

…

On October 23, 2014, Plaintiff established a treating relationship with Stephanie Strand, a psychiatric nurse practitioner (Tr. 1217-22). He reported that he had recently met with Jose Velarde, Psy.D., who concluded that Plaintiff met the criteria for ADHD, combined presentation (Tr. 1218). Plaintiff reported a history of inattention, difficulty concentrating, having to reread his assignments in school several times and never retaining the information (Tr. 1218). He reported increased anxiety in crowds and preferred to sit with his back toward the wall (Tr. 1218). He stated he had "always been like this" and denied any event possibly

6

causing it (Tr. 1218). He stated his depression was currently controlled with medication (Tr. 1218). After he was out of the Army, he wanted to get an undergraduate degree in Criminal Psychology and eventually go to law school (Tr. 1218). Plaintiff's mental status examination was normal, with normal behavior, psychomotor function, speech, mood, affect, thought content, thought process, insight, judgment, and memory (Tr. 1219). Physical examination revealed normal motor function with normal gait and station and posture (Tr. 1220). Plaintiff used all extremities symmetrically with no difficulty (Tr. 1220). … He reported that he was able to work for several hours on his Jeep without losing focus, becoming disinterested, or impatient (Tr. 1200).

…

On February 2, 2015, Dr. Gabriel completed a physical medical source statement for Plaintiff's disability claim (Tr. 1025-28). He opined that during an 8-hour workday, Plaintiff could lift and carry less than 10 pounds, stand and walk for less than 2 hours total, and sit for less than about 6 hours (Tr. 1025-26). His pushing and pulling was limited in both his upper and lower extremities (Tr. 1026). He opined that Plaintiff could never climb, balance, kneel, crouch, crawl, or stoop (Tr. 1026). He could occasionally reach, handle, finger, or feel (Tr. 1027). His hearing was limited (Tr. 1027). He was to have limited exposure to temperature extremes, noise, hazards, and fumes, odors, chemicals, and gases (Tr. 1028).

On February 23, 2015, Plaintiff told Ms. Strand that he was doing better and that his anxiety had been improved with Vistaril (Tr. 1133). He related that he recently returned from a trip to Florida with his family and was able to go into Sea World with minimal anxiety (Tr. 1133). He reported that he became anxious when someone stood too close to him in line, but his wife encouraged him to take a Vistaril to help relax (Tr. 1133).

On February 27, 2015, Dr. Velarde completed a mental medical source statement for Plaintiff's disability claim (Tr. 1265-67). He opined that Plaintiff had moderated to marked limitations in the ability to understand, remember, and carry out instructions; moderate to marked limitations in the ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting (Tr. 1266). He stated that his assessment was supported by Plaintiff's diagnosed ADHD with anxiety and his symptoms of impulsive, hyperactivity, inattention, and anxiety (Tr. 1265-66).

7

[Doc. 20, pg. 3-13].

## B. The hearing before the ALJ

At the hearing before the ALJ, Plaintiff was the only witness to testify. He testified as to his past relevant work as outlined herein. (Tr. 57-59). He indicated he was injured in May 2013 when he was in the United States Army doing physical training. He was attempting to deadlift 580 lbs. when his "back popped." (Tr. 59). He indicated he had a herniated disc in his lower spine, which resulted in him changing duties in the Army. He retired the next March on medical retirement. (Tr. 61). He claimed that the herniation severed part of his spinal cord and caused mild nerve damage down his right leg. (Tr. 63). His hand shakes. (Tr. 63).

In October 2014, he fell down stairs and broke his arm when he was carrying his son. From this fall, he indicated he injured his cervical spine, and now experiences radiculopathy and "deadness in his hand." (Tr. 64). If he raises his arm, his right hand will begin to shake, he said. (Tr. 65). He testified that his injury has progressively worsened since November 2013, with him now spending 75-80% of his day in bed on his back. (Tr. 66). He indicated the intensity of the back pain never falls below a six on a ten-point scale. (Tr. 69). For his cervical spinal injury, he claims the pain ranges from two to eight. He testified he also takes medicine for the pain, but identified a side effect that it made him fall asleep. (Tr. 70-71).

## C. The ALJ's determination

At the outset of this case, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act on his alleged disability onset date of October 15, 2013 and continued to meet them through September 30, 2018. (Tr. 73); *see also* 20 C.F.R. § 404.131. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 73). At step two, she found Plaintiff to suffer from the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar

8

spine. (Tr. 73). She found that the remaining physical impairments, "including his status post right arm fracture with torn muscle, migraines, sleep apnea, obesity, hearing loss, and neuropathy at the wrists," did not cause significant functional limitations and considered them non-severe. (Tr. 74).

She also considered Plaintiff's mental impairments as non-severe, causing no more than minimal limitations on Plaintiff's ability to perform basic mental work activities. (Tr. 74). In reaching this conclusion, she examined the four functional areas for evaluating mental disorders in § 12.00C of the Listing of Impairments, 20 C.F.R., Pt 404, Subpart P, Appendix 1. These are the "Paragraph B" criteria, consisting of (1) daily living activities, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of decompensation. In the first three categories, she found Plaintiff to have only mild limitations, and for the fourth category, she found no episodes of decompensation. (Tr. 75); *see* 20 C.F.R. 404.1520a(d)(1).

At step three, she determined that none of Plaintiff's severe impairments, either alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). (Tr. 76). She found Plaintiff could not return to his past relevant work.

In considering his impairments, she found Plaintiff had the residual functional capacity (RFC) "to lift/carry/push/pull 10 pounds occasionally and less than 10 pounds frequently; stand for 2 hours out of an 8-hour workday; walk for 2 hours out of an 8-hour workday; sit for 6 hours out of an 8-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl … [and] no additional exertional or non-exertional limitations including any limitations in handling and fingering."[1] (Tr. 76). The ALJ found that Plaintiff had an RFC to perform a full range of

---

[1] "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions. *Titles II & Xvi: Determining*

9

sedentary work.

In reading this RFC, she gave great weight to the opinion of Dr. Jerome Cuyler, M.D., an internist, who performed a physical consultative examination of Plaintiff on September 16, 2014. (Tr. 590-98). Dr. Cuyler found Plaintiff had mild to moderate limitations in sitting, standing, walking and climbing stairs and moderate to marked limitations in lifting, carrying, bending, kneeling, reaching, handling objects, and traveling. (Tr. 77, 595). She did not give Dr. Cuyler's opinion regarding Plaintiff's limitations in sitting, reaching, handling objects, and traveling greater weight because she found it less consistent with Plaintiff's presentation. (Tr. 77).

She gave some weight to the opinion of Dr. Jesse Gabriel, who was Plaintiff's treating doctor. Dr. Gabriel found that Plaintiff could frequently lift/carry a maximum of 10 lbs., stand and/or walk less than two hours in an 8-hour workday, sit less than about six hours in an 8-hour workday, and limited in pushing and/or pulling in upper and lower extremities. (Tr. 1062-63). Dr. Gabriel also found that Plaintiff could not engage in any postural activities and was limited to occasionally reaching, handling, fingering, and feeling. (Tr. 1065). He also found certain environmental limitations relative to Plaintiff's exposure to temperature extremes, noise, hazards, and fumes, odors, chemicals and gases.

The ALJ gave some weight to the opinion of Captain Graham Williams, who noted that Plaintiff was not medically retainable "[b]ecause of the chronic nature of his spinal conditions that significantly impact his ability to perform his duties as an infantryman…." (Tr. at 1064). She gave some weight to the opinion that Plaintiff should not lift items over 20 lbs. She did not give greater weight to Captain Williams's opinion that Plaintiff cannot stand for any period of time as she found that was unsupported by the Plaintiff's clinical findings and his reported activities of daily living. (Tr. 78).

She gave great weight to DDS medical examiner, C. Butensky, who, after examining the

---

*Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996)

available records on October 2, 2014, found Plaintiff had no significant mental limitations. (Tr. 116-121). She gave little weight to the opinions of Dr. Velarde and Melcher, finding them inconsistent with Plaintiff's activities and his positive response to conservative treatment. (Tr. 78).

Plaintiff was born on September 8, 1979 and was 34 years old, which is defined as a younger individual, as of the alleged disability onset date. He has a high school education. The ALJ found that Plaintiff had an RFC to perform a full range of sedentary work. The ALJ then employed Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Citing to Medical-Vocational Rule 201.28, she found Plaintiff not disabled. (Tr. 79). She did not rely on the testimony of a vocational expert.

## III. DISCUSSION

### A. Controlling Law

As an initial matter, Plaintiff notes that this matter was heard by the Syracuse, New York, Office of Disability Adjudication and Review as Plaintiff was a residence of New York at the time of the hearing. He contends that Second Circuit Case law governs this matter, citing *Reece v. Colvin*, No. 2:11-cv-378 (E.D. Tenn. 2015). The Court will utilize the law of the Second Circuit in addressing the issues raised by Plaintiff.

### B. The ALJ's use of the Grids

The ALJ used the grids to find Plaintiff not disabled. The Commission has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his age, experience, education, and residual functional capacity. 20 C.F.R. § 404.1520, 416.920. The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations and where the

11

claimant's RFC findings coincide with all the grid criteria. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(a); *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

Because the grids address only exertional impairments, the existence of significant nonexertional impairments mandates further analysis to determine whether those impairments will substantially reduce the base of occupations which the claimant can perform. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) ("sole reliance on the [g]rid[s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform"). "Where significant nonexertional impairments are present at the fifth step in the disability analysis ... [the ALJ] 'must introduce testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which the claimant can obtain and perform." *Id.* at 82. The Second Circuit has held that "the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013)

### 1. *The treating physician rule*

In reaching the conclusion that Plaintiff had no nonexertional impairments, Plaintiff claims that the ALJ failed to properly weigh the opinion of Dr. Jesse Gabriel, a pain management specialist and Plaintiff's treating physician. [Doc. 13, pg. 10], (Tr. 1025-28). He argues that the ALJ failed to follow the process contained in 20 C.F.R. § 404.1527(c), claiming that the ALJ did not provide an explanation as to why Dr. Gabriel's opinion was not "well-supported by medically acceptable techniques" or was "inconsistent with the other substantial evidence" [Doc. 13, pg. 10]. He notes that the ALJ rejected Dr. Gabriel's opinion because it was inconsistent with Plaintiff's daily activities. (Tr. 45-46); *see Greek v. Colvin*, 802 F.3d 370 (2d Cir 2015) (holding that an ALJ "is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion").

12

Dr. Gabriel found Plaintiff had a number of nonexertional limitations, opining that Plaintiff should never engage in postural activities such as climbing, balancing, kneeling, reaching, crouching, crawling and stooping because of Plaintiff's spinal cord damage and bulging discs. (Tr. 1026). Dr. Gabriel also found other nonexertional limitations in Plaintiff's ability to handle, finger, feel and reach overhead, or what are called manipulative limitations. Again, Dr. Gabriel noted that these limitations were consistent with Plaintiff's spinal cord injuries and the MRI findings.[2] (Tr. 1027).

An ALJ must give the opinion of a treating source controlling weight if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the [case] record." 20 C.F.R. § 404.1527(c)(2). "While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must 'comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion.'" *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). An ALJ's failure to give "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("We hold that the Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error").

If the ALJ does not accord controlling weight to the opinion of a treating source, she must apply certain factors – namely, the length of the treatment relationship and the frequency of

---

[2] It is insightful that Dr. Gabriel's opinion is similar to the opinion of the Commissioner's consulting physician, Dr. Jerome Cuyler, who opined that Plaintiff had moderate to marked limitations in bending, lifting, carrying, kneeling, reaching, handling objects, and traveling. (Tr. 595).

examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion. *Halloran*, 362 F.3d at 32. Additionally, as noted by SSR 96-2p, a decision denying benefits "must contain specific reasons for the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight.

In this case, the ALJ did not provide "good reasons" for her rejection of Dr. Gabriel's opinion. None of the Plaintiff's activities the ALJ relied upon for discounting the treating physician's opinion had anything to do with the limitations at issue. For example, the ALJ cited to the fact that Plaintiff drove to his appointments, went on vacation, went to SeaWorld, and "worked"[3] on his Jeep. But none of these activities address the essence of Plaintiff's limitations as noted by Dr. Gabriel. The ALJ also noted that Plaintiff could do all of these activities during many of the medical examinations, citing generally to the entire medical record without giving any specific reference where such activities or tests were done. The Court finds, under these circumstances, the reasons the ALJ provided are too ambiguous to completely discount the treating physician's opinion and certainly inconsistent with the regulations requiring the identification of good reasons why the treating physician's opinion should not be afforded controlling weight.[4]

### 2. *The ALJ's finding that Plaintiff's mental impairments are non-severe*

The ALJ also found Plaintiff did not have a severe mental impairment. Plaintiff argues the ALJ erred in not giving Dr. Jose Velarde's or Dr. Carly Melcher's opinion sufficient weight.

---

[3] It is not clear what "work" Plaintiff did on his Jeep. That was never developed in the record.

[4] The state agency consultant, Dr. Cuyler also found marked limitations in Plaintiff's ability to engage in bending, lifting, carrying, kneeling, reaching, and handling objections. (Tr. 595). Again, the ALJ discounted that opinion based on Plaintiff's "presentation during most exams," citing generally to the entire medical record without any specific reference to any particular activity or test that would otherwise support that conclusion, and relied on Plaintiff's reported ability to drive, work on his Jeep, and travel out of state.

14

(Tr. 1265-67). The ALJ discounted both of these opinions, finding them inconsistent with a DDS medical consultant's opinion and with Plaintiff's conservative treatment and his activities. The Court notes, initially, that although the ALJ gave great weight to the opinion of the DDS consultant, the consultant is only identified as C. Butensky. His or her credentials are not identified, and thus, it is impossible to know whether the ALJ's decision to place great weight in the consultant's opinion was even warranted at the outset. The Commissioner argues that C. Butensky indicated a medical specialty code of "38" which correlates to a medical specialty of psychology. That, however, still does not identify his or her credentials in that field. This is especially important when the ALJ gives more weight to Butensky's opinion than those of Dr. Velarde and Dr. Melcher.

The ALJ also found Plaintiff's activities to be inconsistent for someone suffering with a severe mental impairment. The regulations provide that where a claimant is found to have a mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," § 404.1520a(b)(2). This regulation specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). If the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the ALJ generally will find that the claimant's mental impairment is not "severe." 20 C.F.R. § 404.1520a(d)(1); *see also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008).

In finding Plaintiff's mental impairment not severe, the ALJ found only mild limitations in the activities of daily living and social functioning, basing her finding on the fact that Plaintiff drove to his consultative examination, traveled to Tennessee, worked on his Jeep, went on vacation, and thought about going to law school. She also noted he only received conservative

15

treatment for his mental limitations. But just because one is treated conservatively does not mean that he does not have a severe mental impairment. One can go on a vacation, work on a Jeep, and still have marked limitations under the "paragraph B" factors as both Dr. Velarde and Dr. Melcher found.

Indeed, a severe mental impairment is one "which significantly limits his … mental ability to do basic work activities…." *Rosa*, 168 F.3d at 77; *see also* 20 C.F.R. § 404.1520(c). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727 at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12, 107 S. Ct. 2287, 2298 n. 12 (1987)). The Second Circuit has warned that the step two analysis may not do more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

Additionally, the impairment must affect Plaintiff's ability to perform basic work activities. Those would include:

> walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations ... [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6). Both Dr. Velarde and Dr. Melcher opined that Plaintiff has more than "a slight abnormality" in some of these activities. The ALJ's decision to discount their opinions based on an opinion of the DDS medical consultant, whose credentials are unknown, and on Plaintiff's daily activities, as identified by the ALJ in this case, is simply not supported by substantial evidence.

### C. The ALJ's treatment of Plaintiff's subjective complaints

Plaintiff also claims that the ALJ erred in failing to properly consider his subjective

16

allegations. He claims that subjective complaints of pain, when accompanied by objective medical findings, are entitled to great weight. He argues that the ALJ's description of Plaintiff's activities were inaccurate and not a proper basis to discount his testimony.

"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms. *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2. While it is "not sufficient for the [ALJ] to make a single, conclusory statement that" the claimant is not credible or simply to recite the relevant factors, *id*. at *2, remand is not required where "the evidence of record permits us to glean the rationale of an ALJ's decision," *Cichocki,* 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983)).

> In making credibility judgments about a claimant's credibility, the ALJ should consider:
>
> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms ...; and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

An ALJ may discount a claimant's credibility when she finds contradictions among the

17

medical records, the claimant's testimony, and other evidence. *Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "It is for the [Commissioner] and [her] examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ concluded that Plaintiff's medical impairments could cause the symptoms he alleged, but declined to credit his testimony regarding the intensity, persistence, and limiting effects of the symptoms to the extent they were inconsistent with the medical evidence, including the medical assessments and treatment notes. While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), she provided specific reasons for her credibility determination, including referencing the treatment notes and Plaintiff's testimony. She noted that he generally had a normal gait with no reported difficulties standing or remaining seated during examinations, and that he was able to drive long distances, and go on vacation. As such, the ALJ's analysis of Plaintiff's credibility was supported by substantial evidence and Plaintiff's arguments fail in this regard.

## IV. CONCLUSION

In the opinion of the Court, for the reasons stated herein, the ALJ's decision to reject the opinion of the treating physician and that of Dr. Velarde and Dr. Melcher is not supported by substantial evidence. Accordingly, Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] is GRANTED, and that Defendant Commissioner's Motion for Summary Judgment [Doc. 19] is DENIED. The case is REMANDED to the Commissioner for further administrative proceedings consistent with this Memorandum and Order.

18

SO ORDERED:

s/Clifton L. Corker
United States Magistrate Judge